## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNEVER LIVINGSTON,** | : | **CIVIL NO. 1:15-CV-1792** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN LENARD ODDO,** | : | |
| | : | |
| **Respondent** | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Dennever Livingston ("Livingston"), a federal inmate incarcerated at the Allenwood United States Penitentiary ("USP-Allenwood"), in White Deer, Pennsylvania.  (Doc. 1).  Livingston contends that his due process rights were violated in the context of a prison disciplinary hearing.  The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.   Background

On April 28, 2008, while incarcerated at the Federal Correctional Institution in Yazoo City, Mississippi, Livingston was charged in incident report number 1726978 with possessing intoxicants, in violation of Federal Bureau of Prisons ("BOP") Prohibited Acts Code Section 222.  (Doc. 8 at 1-2; Doc. 8, Ex. 1, Declaration of K. Michael Sullivan, BOP Senior Attorney, ¶ 4).

In the instant petition, Livingston complains that his due process rights were violated during the prison disciplinary hearing. (Doc. 1). Specifically, he contends that the incident report was falsified. (Id. at 3). For relief, Livingston seeks expungement of the disciplinary finding and restoration of his good conduct time. (Id. at 4).

Livingston asserts that he has exhausted the available administrative remedies. (Id. at 2-3). In response, respondent explains that copies of administrative remedies filed before 2011 have been destroyed and, therefore, the BOP cannot determine if Livingston has properly exhausted the claims in the instant petition. (Doc. 8 at 2, n.1). Respondent has thus waived exhaustion. (Id.) Accordingly, the court will proceed to the merits of Livingston's claims.

## II.   Discussion

On April 28, 2008, Livingston was served with incident report number 1726978, charging him with a code 222 violation for "making, possessing, or using intoxicants." (Doc. 8-1 at 13, Incident Report). The incident is described as follows:

> While conducting cell searches, I found approximately 4 gallons of an orange-colored liquid in a plastic bag inside of a trash can. It was inside cell 123 which is assigned to Inmate Livingston, Dennever. It later tested positive at .9999 on the Alco Sensor 3.

(Id.)

On April 28, 2008, Acting Lieutenant K. Barker gave Livingston advanced written notice of the charges against him. (Id. at 15). During the investigation of the incident, Livingston was advised of his right to remain silent and he indicated that he understood his rights. (Id.) Livingston was provided a copy of the incident

report, and stated, "[t]hat doesn't belong to me, and it was not in my cell." (Id.)
Based on the description of the incident and Livingston's statement, the
investigator referred the matter to the Unit Discipline Committee ("UDC") "for
further disposition … and any subsequent sanction(s)." (Id.)

On April 30, 2008, Livingston appeared before the UDC. (Id. at 14).
Livingston was advised of his rights and he acknowledged that he understood them.
Livingston stated, "I'm not the owner of what they gave me.  They found it in about
4 different people houses" [sic]. (Id.)  Due to the severity of the offense, the UDC
referred the incident report to the DHO with a recommendation that sanctions be
imposed. (Id.)

A staff member informed Livingston of his rights at the DHO hearing and
provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc.
8-1 at 17, Inmate Rights at Discipline Hearing).  Livingston was also provided with a
"Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form.
(Doc. 8-1 at 19, Notice of Discipline Hearing before the Discipline Hearing Officer
(DHO)).  Livingston signed both forms.  Livingston waived his right to have a staff
member represent him and elected not to call any witnesses. (Id.)

On May 5, 2008, Livingston appeared for a hearing before DHO Mark
Gennaro. (Doc. 8-1 at 21, DHO Report).  During the May 5, 2008 hearing, the DHO
confirmed that Livingston received advanced written notice of the charges on April
28, 2008, that he had been advised of his rights before the DHO on April 30, 2008,
that he waived his right to a staff representative, and did not request to call any
witnesses. (Id.)  The DHO again advised Livingston of his rights, Livingston

3

indicated that he understood them, and that he was ready to proceed with the hearing. (Id.) Livingston made the following statement regarding the charges, "I did have a bag of hooch, but I just made it the night before, so it couldn't have tested positive for alcohol." (Id.)

After consideration of the evidence, the DHO found that Livingston committed the prohibited act of possessing intoxicants. (Id.) The DHO explained his findings as follows:

> The DHO finds that on April 28, 2008, at or about 2:10 p.m., you committed the prohibited act of Possession of Intoxicants, Code 222. The DHO relied on the eye witness account from the reporting officer, who stated while conducting cell searches, she found approximately four gallons of an orange colored liquid (suspect intoxicants), inside your assigned cell (D2-123). She stated it was found hidden inside your trash can and did in fact test positive for alcohol with a reading of .9999.

> In your defense, you deny the charge. You contend that you had just made the hooch the night before and that it would not have fermented enough to test positive.

> By your own admission, you stated you were in the process of making homemade intoxicants. The reporting officer stated she found four gallons of suspect intoxicants inside your assigned cell (D2-123), and the suspect intoxicants found inside your assigned cell tested positive for alcohol with a reading of .9999. The DHO spoke with SIS staff who confirmed that .9999 is a valid reading. Therefore, the DHO concludes that you were in possession of homemade intoxicants (hooch).

> Program Statement 6590.07, *Alcohol Surveillance and Testing Program*, states that suspect liquids with a test reading of .02 or higher shall be considered positive for alcohol.

> Program Statement 5270.07, *Inmate Discipline and Special Housing Units*, Chapter 3, page 1, states that it is your responsibility to keep your area free of contraband.

> The DHO believes that you committed the prohibited act of Code 222. The decision was based on the eyewitness account of the reporting officer, who stated you were found in possession of hooch (inside your cell). The decision is also based on the test conducted on the suspect intoxicants found in your cell, resulting in a positive reading of .9999.
>
> Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

(Id. at 22).

As such, the DHO sanctioned Livingston with twenty-seven (27) days disallowance of good conduct time, one hundred eighty (180) days commissary restriction, and thirty (30) days in disciplinary segregation. (Id. at 23). The DHO documented his reasons for the sanctions given as follows:

> You were sanctioned with Disciplinary Segregation and Loss [of] Good Conduct Time as punishment.
>
> The sanction of Commissary Restriction is imposed because the severity of the offense merits imposition of a sanction which will impress upon you, that your unwillingness to abide by rules and regulations will result in punishment, which will deprive you of a pleasurable privilege.
>
> Your Change of Quarters was imposed, because the DHO felt it was best for the orderly running of the institution. The DHO also believes that you are [in] need of greater supervision.
>
> Possession and/or use of intoxicants within a correctional setting can have extremely serious repercussions for both staff and inmates, since it tends to result in disruptive and violent behavior. In the past, inmates under the influence of intoxicants have become violent toward others, and this behavior cannot be tolerated.
>
> The sanctions imposed by the DHO are to let you know that you, and you alone, are responsible for your actions.

(Id.) Livingston was advised of his appeal rights at the conclusion of the hearing.

(Id.)

Livingston's sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).  If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff.  Hill, 472 U.S. at 457.

6

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. § 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the present matter, it is clear that Livingston was afforded all of the required procedural rights set forth in <u>Wolff</u>.  He received timely notice of the incident report.  He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Livingston declined a staff representative, declined to call any witnesses, and presented no evidence in support of his position.  At the conclusion of the hearing, Livingston received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision.  Livingston was also notified of his right to appeal.

Since Livingston was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Livingston was guilty of the charge.  The DHO relied upon the eyewitness account of the reporting officer, Livingston's brief statement denying the charge, the test conducted on the suspect intoxicants found in Livingston's cell which resulted in a positive reading of .9999, and Livingston's admission that he was in the process of making homemade intoxicants.  Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by Livingston, except his rather incriminating denial of the prohibited act charged, the court finds that Livingston's due process rights were not violated by the determination of the DHO.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Livingston was found guilty of a 200-level, high severity prohibited act.[1] Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

A.  Recommend parole date rescission or retardation.
B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1  Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.  Disciplinary segregation (up to 6 months).
D.  Make monetary restitution.
E.  Monetary fine.
F.  Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.  Change housing (quarters).
H.  Remove from program and/or group activity.
I.  Loss of job.
J.  Impound inmate's personal property.
K.  Confiscate contraband.
L.  Restrict to quarters.
M.  Extra duty.

---

[1] The court notes that Livingston was charged under the regulations formerly set forth at 28 C.F.R. §§ 541.1-541.17. The BOP's Inmate Discipline Program Regulations were revised and the new regulations became effective on June 20, 2011, set forth at 28 C.F.R. §§ 541.1-541.8. Under the former regulations, Livingston's offense of possessing intoxicants was listed as a code 222 violation, under the category of "High Severity Level Prohibited Acts." Under the new regulations, this conduct is now classified as a code 113 violation, listed under the category of "Greatest Severity Level Prohibited Acts." The court will analyze Livingston's sanctions under the category for which he was charged, as there would be no difference with respect to the resulting sanctions if he was charged with a code 13 violation as opposed to a code 222 violation.

28 C.F.R. § 541.3 (Table 1).  Thus, the sanctions imposed by the DHO in this

instance were consistent with the severity level of the prohibited act and within the

maximum available to the DHO.  Accordingly, the petition will be denied as to

incident report number 1726978.

## III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied.

An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        September 13, 2016